**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| A.J. TRUCCO, INC., | CIVIL ACTION |
| Plaintiff, | No. 22-cv-07732-AT |
| v. | |
| REDCELL CORP., and REDCELL SYSTEMS, LLC, | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANTS'**
**MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV.  P. 12(b)(6)**

Charles J. Messina, Esq.
Lawrence Bluestone, Esq.
**GENOVA BURNS LLC**
30 Montgomery Street, 11th Floor
Jersey City, NJ 07302
(973) 533-0777

*Attorneys for Plaintiff,*
*A.J. Trucco, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..........................................................3

      A.     Trucco's Business Information and Computer Files .......................................................3

      B.     Redcell's Improper Access to Trucco's Server ...............................................................4

      C.     The Motion to Amend in the  Redcell Action...................................................................6

      D.     The Action ...................................................................................................................6

ARGUMENT ...........................................................................................................................7

      I.      PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE NOT
            BARRED BY *RES JUDICATA* ...............................................................................8

      II.     TRUCCO'S COMPLAINT ADEQUATELY STATES A CLAIM
            FOR RELIEF UNDER CFAA..................................................................................12

      III.    TRUCCO ADEQUATELY ALLEGES A CLAIM FOR VIOLATIONS
            OF NEW JERSEY LAW ...........................................................................................14

            A.     Trucco Pleads a Nexus between the Alleged Conduct and Harm Felt
                in New Jersey to Permit Claims Under New Jersey Law ...................................14

            B.     Even if the Court Dismisses the CFAA Claim It Should Retain
                Jurisdiction Over the State Law Claim ............................................................16

CONCLUSION.......................................................................................................................17

## **TABLE OF AUTHORITIES**

### **Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ............................................................................................ 8

*A & G Rsch., Inc. v. GC Metrics, Inc.,*
    862 N.Y.S.2d 806 (NY Sup. Ct. 2008) ............................................................. 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 7

*Dedalus Found. v. Banach,*
    No. 09 CIV. 2842 (LAP), 2009 WL 3398595 (S.D.N.Y. Oct. 16, 2009) ................ 12

*Est. of Moore v. Roman,*
    No. CV1816345RBKKMW, 2021 WL 3163992 (D.N.J. July 27, 2021) ................ 10

*FUJIFILM N. Am. Corp. v Geleshmall Enterprises LLC,*
    239 F. Supp. 3d 640 (E.D.N.Y. 2017). .......................................................... 10-11

*Global Network Commc'ns, Inc. v. City of New York,*
    458 F.3d 150 (2d Cir. 2006) ................................................................................ 7

*Greenwich Life Settlements v. Viasource Funding,*
    742 F. Supp. 2d 446 (S.D.N.Y. 2010) ................................................................. 8

*Halak v. Scovill,*
    296 N.J. Super. 363, 686 A.2d 1245 (App. Div. 1997) ........................................ 15

*Halebian v. Berv,*
    644 F.3d 122 (2d Cir. 2011) ................................................................................ 7

*Jones v. Ford Motor Credit Co.,*
    358 F.3d 205 (2d Cir. 2004) ....................................................................... 10, 16-17

*Joyner v. Alston & Bird LLP,*
    No. 21CIV8549ATSLC, 2022 WL 6244417 (S.D.N.Y. May 13, 2022),
    *report and recommendation adopted,* 2022 WL 4115954 (S.D.N.Y. Sept. 9, 2022) .............. 10

*Kassner v. 2nd Ave. Delicatessen Inc.,*
    496 F.3d 229 (2d Cir. 2007) .......................................................................... 3, 7, 15

*Kramer v. Time Warner Inc.,*
    937 F.2d 767 (2d Cir. 1991) ................................................................................ 8

*Lawlor v. National Screen Service Corp.*,
 349 U.S. 322 (1955)....................................................................................... 9

*LivePerson Inc. v. 24/7 Customer, Inc.*
 83 F. Supp. 3d 501 (S.D.N.Y. 2015)............................................................... 12

*Marvel Characters, Inc. v. Simon*,
 310 F. 3d 280 (2d Cir. 2002)............................................................................ 8

*McKenna v. City of Philadelphia*,
 304 F. App'x 89 (3d Cir. 2008) ...................................................................... 10

*Mercoid Corp. Mid-Continent Inv. Co.*,
 320 U.S. 661 (1944)......................................................................................... 11

*Metallgesellschaft AG v. Foster Wheeler Energy Corp.*,
 143 F.R.D. 553 (D. Del. 1992) ....................................................................... 11

*Nevada v. United States*,
 463 U.S. 110 (1983)........................................................................................... 9

*NLRB v. United Techs. Corp.*,
 706 F.2d 1254 (2d Cir. 1983)............................................................................ 9

*No. Assurance Co. v. Square D Co.*,
 201 F.3d 84 (2d Cir. 2000).................................................... 2, 9, 10, 11, 12

*Nowak v. Ironworkers Local 6 Pension Fund*,
 81 F.3d 1182 (2d Cir. 1996)............................................................................ 16

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
 602 F.3d 57 (2d Cir. 2010)................................................................................ 8

*Poller v. BioScrip, Inc.*,
 974 F. Supp. 2d 204 (S.D.N.Y. 2013)............................................................. 13

*Prime Mgmt. Co. v. Steinegger*,
 904 F.2d 811 (2d Cir. 1990).............................................................................. 9

*SEC v. First Jersey Securities, Inc.*,
 101 F.3d 1450 (2d Cir. 1996)............................................................................ 9

*Shahriar v Smith & Wollensky Rest. Group, Inc.*,
 659 F3d 234 (2d Cir. 2011)............................................................................. 16

iii

*Sikhs for Justice v. Nath,*
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) ............................................................... 7

*United Mine Workers of America v. Gibbs,*
   383 U.S. 715 (1966) ......................................................................................... 16

*United States v. McGann,*
   951 F. Supp. 372 (E.D.N.Y. 1997) ................................................................. 10

*Villager Pond, Inc. v. Town of Darien,*
   56 F.3d 375 (2d Cir. 1995) ................................................................................ 7

*Yaba v. Roosevelt,*
   961 F. Supp. 611 (S.D.N.Y. 1997) ................................................................. 10

## **Statutes**

28 U.S.C. § 1404(a) ..................................................................................... 1, 7

28 U.S.C. § 1367(c)(3) ..................................................................................... 16

Computer Fraud and Abuse Act,
   18 U.S.C. § 1030(a)(2)(C) ..................................................................... *passim*

Defend Trade Secrets Act,
   18 U.S.C. § 1836 ................................................................................................ 4

## **Rules**

Fed. R. Civ. P. 8(a) ............................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ........................................................................ 1, 3, 6, 7, 15

Fed. R. Civ. P. 13 ............................................................................................ 10

## INTRODUCTION

Plaintiff A.J. Trucco Inc. ("Trucco") respectfully submits this Memorandum of Law in opposition to the Motion to Dismiss of Defendants Redcell Corp. and Redcell Systems, LLC ("Redcell") (Docket No. 30).  Redcell and Trucco are litigating a different dispute in this Court, Case No. 20-cv-00018-AT-SLC (the "Redcell Action"), in which Redcell alleges that Trucco misappropriated Redcell's trade secrets, purportedly relating to certain PLEXUS IMP software, and that Trucco allegedly improperly retained Redcell's independent contractors.

In 2021, Trucco sought leave to amend its Answer in the Redcell Action to assert, among other things, a permissive counterclaim alleging that Redcell violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) ("CFAA"). The Court denied that Motion on the basis of certain pleading deficiencies that the Court held rendered the claim insufficient as a matter of law. Trucco filed this action in the U.S. District Court for the District of New Jersey, addressing and curing the pleading deficiencies and the action was thereafter transferred to this Court pursuant to 28 U.S.C. § 1404(a).  Redcell has now moved to dismiss this Complaint under Fed. R. Civ. P. 12(b)(6).  The Court should deny Redcell's motion.

Redcell first contends that this action is barred by *res judicata* based on the Court's decision denying leave to assert the CFAA claim as a permissive counterclaim in the Redcell Action.  The cases relied on by Redcell, however, all deal with situations where the court in the prior action denied the plaintiff leave to amend a complaint to assert an additional claim arising out of the same transaction or occurrence.  In that scenario, the Second Circuit has held that *res judicata* prohibited filing the proposed claim in a new action because the denial of leave to amend signified that the claim had been forfeited when the party had not properly brought them in the first action ***even though they related to the same transaction or occurrence***.

*No. Assurance Co. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000). That rationale does not apply here in the context of Trucco's CFAA claim, which was a ***permissive counterclaim that does not arise out of the same transaction or occurrence as the Redcell Action***. The CFAA action only arose after the Redcell Action was filed, when Redcell's authorization to access Trucco's system had been revoked and does not relate in any way to Redcell's allegations about the PEXUS IMP software or hiring of Redcell's former contractors. Because it was a permissive counterclaim, Trucco had no obligation to bring the CFAA claim in the Redcell Action and the order denying leave to assert it as a permissive counterclaim based on alleged pleading deficiencies and does not support application of *res judicata* to bar this action.

As to the CFAA claim itself, Redcell attempts to ignore the allegations in Trucco's Complaint, which specifically address the pleading deficiencies identified by the Court in the Redcell Action. Specifically, the Court agreed with Trucco that, after the end of Trucco and Redcell's business relationship, Redcell's authorization to access Trucco's server ended, but faulted Trucco for not pleading sufficient facts to show that it had attempted to revoke the access or notify Redcell it was not longer authorized to do so. Trucco's Complaint now alleges specific facts demonstrating how it discovered Redcell's software was still running on its system after the Redcell Action was filed and detailing the efforts Trucco took to revoke access, including attempting to obtain the password to the software that gave Redcell access to the server, and ultimately switching to a new, cloud-based server that Redcell could not access. But this took time. And, in the interim, Trucco alleges, Redcell continued to access the server, despite having no authorization to do so, and ultimately copied and made use of Trucco's confidential documents to try and gain an advantage in the Redcell Litigation. Trucco's allegations adequately state a claim under the CFAA.

2

Finally, Redcell contends that Trucco should not be able to assert claims under New Jersey law because it is a New York corporation and its server was physically located in New York. But Trucco alleges that it operated a warehouse facility in New Jersey—something Redcell was aware of—and that Redcell always knew that Trucco's server was used in New Jersey. Because Trucco alleges that its conduct harmed Trucco in New Jersey, it is permitted to assert claims under New Jersey law. And even if the Court were to dismiss Trucco's CFAA claim, it should exercise its discretion to retain supplemental jurisdiction over these New Jersey claims, the legal sufficiency of which Redcell does not challenge.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Trucco alleges the following facts in its Complaint ("Compl.") [Docket No. 1]. In evaluating Redcell's motion under Fed. R. Civ. P. 12(b)(6), the Court must accept these factual allegations as true and draw all reasonable inferences in Trucco's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

### A.  **Trucco's Business Information and Computer Files**

Trucco is an agricultural product wholesaler with two main locations: its location in New York, and its distribution facility in Vineland, New Jersey. (Compl. ¶ 14.) For several years, ending in 2019, Redcell provided software development, IT support and maintenance, and logistics services to Trucco. (*Id.* ¶ 4.) During this time, Trucco's electronic business records were located on a server that while physically located at Trucco's New York office, served, and supported Trucco's operations company-wide, including its New Jersey location. (*Id.* ¶ 20.) Redcell provided services directly to Trucco's New Jersey facility. (*Id.* ¶ 13.)

Among other records, Trucco maintained an electronic folder labeled "Exclusive" (the "Exclusive Folder"), which contained proprietary and highly confidential business information

that only Trucco's top executives were permitted to access.  (Compl. ¶¶ 21-22.) Even while they were still under contract with Trucco, Redcell was never authorized to access files or backup copies of Trucco's proprietary and confidential documents. (*Id.* ¶¶ 18-23, 29, 40.)

### B.  <u>Redcell's Improper Access to Trucco's Server</u>

After their relationship ended in 2019, on January 3, 2020, Redcell filed the Redcell Action alleging, generally, that Trucco breached its contractual obligations to Redcell and violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.,* ("DTSA") in connection with the PLEXUS IMP software. (*Id.* ¶ 27.) Trucco has denied any wrongdoing and the Redcell Action is set to go to trial in November 2023.

After the Redcell Action began, Trucco noticed that Redcell had installed software on Trucco's server without permission and, even though the relationship between Trucco had ended, ***Redcell's software continued to run***, copying Trucco's confidential files and information through the Spring of 2020. (*Id.* ¶ 5.)  Specifically, Trucco's IT consultant noticed that the server was continuing to run a program called FileZilla that was apparently making a backup copy of the server.  (*Id.* ¶ 29.)

Trucco began taking steps to change its server, including changing its passwords for the former Redcell programs that were running on the server, which would have prevented Redcell from accessing the server. (*Id.* ¶¶ 30-31.) However, in investigating and attempting to change the server, Trucco discovered additional software that Redcell had installed, namely VMWARE, which allowed Redcell to have remote access to Trucco's server. (*Id.* ¶ 32.)  Trucco attempted to obtain the VMWARE password from Redcell, but was unsuccessful, and was ultimately forced to contact the software manufacturer, VSPhere, to manually change the password and remove Redcell's access.  *Id.*

Trucco was only able to fully switch its server to a new, cloud-based server as of May 2020. (Compl. ¶ 34.) Trucco discovered, however, that, in the interim, Redcell had continued to access the old server and, indeed, not only continued copying files—despite the end of the parties' relationship—but accessed them and used them in the Redcell Action. During a deposition of one of Trucco's executives in the Redcell Action on April 5, 2021, Redcell's counsel showed the witness a copy of a confidential settlement document between Trucco and another company resolving an unrelated legal dispute and a copy of its confidential tax returns, which could only have come from Redcell's old server. (*Id.* ¶ 38.) Redcell's president, Helder Molina was also deposed in the Redcell Action. During his deposition, Molina acknowledged that Redcell has accessed Trucco's confidential and proprietary data and trade secrets stored in "the Cloud" as part of its prosecution efforts in the Redcell Action, and did so because Redcell still has the backup copy and access codes to retrieve such data and had accessed more than 10,000 documents belonging to Trucco. (*Id.* ¶ 41.) Later in 2021, during a deposition of Redcell's litigation expert in the Redcell Action, Trucco learned that Redcell's expert had reviewed and used documents from Trucco's server and had included what appeared to be documents form 2020 and 2021.  Until that point, Trucco had been unaware of the extent of Redcell's access to its information, despite its efforts to revoke Redcell's access. (*Id.* ¶ 44.)

As a result of Redcell's actions, Trucco had to completely overhaul its data storage system, resulting in extensive costs, well over $5,000. (*Id.* ¶¶ 48-49.) These costs included expending money for the time of its IT consultants to remove access to its servers and backup servers and to move its data to a new server, while also completely overhauling Trucco's data storage system.  *Id.*

C.  **The Motion to Amend in the Redcell Action**

On May 28, 2021, Trucco sought to amend its answer in the Redcell Action to include a counterclaim against Redcell for violation of the CFAA (as well as other claims). (*See* Declaration of Jay Edmond Russ ("Russ Decl."), Exhibit G [Docket No. 34-3].)[1] This Court ultimately denied Trucco's motion, adopting in large part Magistrate Judge Cave's Recommendation and Report, holding that Trucco's allegations were legally insufficient. ("Redcell Action Decision") (Russ Decl. Exhibit J [Docket No. 34-6].)

The Court held that Trucco's proposed counterclaim "fail[ed] to describe the scope of Redcell's access to the server during the parties' business relationship," and "establish[ed] only that Redcell allegedly misused or misappropriated information it was otherwise allowed to access." (*Id.* at 6.)  The Court further noted that, although "drawing all inferences in Trucco's favor, certain of its factual allegations could potentially support CFAA liability," the conclusory way in which Trucco alleged the termination of Redcell's authority to access Trucco's server occurred was "insufficient to demonstrate unauthorized access within the meaning of the CFAA[.]" *Id.*

D.  **This Action**

Trucco initiated this Action on May 17, 2022 in the U.S. District Court for the District of New Jersey, by filing a Complaint asserting three claims alleging that Defendants violated: (i) the CFAA; (ii) the New Jersey Computer Related Offenses Act ("NJCROA"); and (iii) New Jersey common law protections against invasion of privacy.  (*Id.* ¶¶ 50-70.)

On July 1, 2022, Redcell filed a pre-motion letter seeking leave to file a motion pursuant to, inter alia, Fed. R. Civ. P. 12(b)(6), partially on the basis that venue for this action is

---

[1] Trucco refers to the exhibits to Mr. Russ's Declaration, filed in connection with Redcell's Motion to Dismiss [Docket No. 34], not to the docket numbers in the Redcell Action.

misplaced in this district because the agreements between the parties were signed in New York and Trucco's server was located in New York.  [Docket No. 14, at 3.]  Trucco opposed. [Docket No. 15 at 3.]   On September 2, 2022, the District of New Jersey transferred this matter to this Court under 28 U.S.C. § 1404(a) [Docket No. 19].  After pre-motion letters, Defendants' current Motion followed.

## **ARGUMENT**

Under the Federal Rules, a plaintiff must plead a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. To survive a motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The question in a Rule 12 motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Sikhs for Justice v. Nath,* 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of Plaintiff's claims. *Halebian v. Berv,* 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 155 (2d Cir. 2006)).

A facially plausible claim is one where "the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where the Court finds well-pleaded factual allegations, it should assume their veracity and determine whether they "plausibly give rise to an entitlement to relief." *Id.* at 678. In ruling on a motion to dismiss, a "court may consider the facts asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted).

Here, Trucco has met its burden to plead a facially plausible claim that Redcell has violated the CFAA, the NJCROA, and common law protections against invasion of privacy, curing the pleading deficiencies identified by the Court in the Redcell Action. The Court should deny Redcell's Motion.

## I.     PLAINTIFF'S CLAIMS AGAINST DEFENDANTS ARE NOT BARRRED BY *RES JUDICATA.*

Contrary to Redcell's argument, this action is not barred by *res judicata* based on the Court's decision denying Trucco leave to amend its Answer to add a Counterclaim in the Redcell Action.  "Dismissal based on *res judicata* is appropriate where it is clear from the face of the complaint and from matters of which the Court takes judicial notice that plaintiff's claims are barred." *Greenwich Life Settlements v. Viasource Funding*, 742 F. Supp. 2d 446 (S.D.N.Y. 2010); *see also Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Both New York law and federal law apply *res judicata* or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties of their privies and (3) a subsequent suit based on the cause of action. *Marvel Characters, Inc. v. Simon*, 310 F. 3d 280, 286 (2d Cir. 2002).

With respect to the determination of whether a second suit is barred by *res judicata*, the fact that both suits involved essentially the same course of wrongful conduct is not decisive. *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) (*citing Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 815 (2d Cir. 1990)). Nor is it dispositive if the two legal proceedings involved the same parties, similar or overlapping facts, and similar legal issues. *Id.*; *see also NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1259-60 (2d Cir. 1983). A first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is "whe[re] the same evidence is needed to support both claims, and whe[re] the facts essential to the second were present in the first." *United Techs.*, 706 F.2d at 1260; *see also Nevada v. United States*, 463 U.S. 110, 128-30 (1983) (court must determine whether same "cause of action" is sued on); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 329 (1955) ("[A] prior judgment is *res judicata* only as to suits involving the same cause of action").

Redcell's argument is predicated on a line of cases holding that denial of leave to amend a **complaint** is a final judgment on the merits for *res judicata* purposes because *res judicata* applies not only to claims that were brought in the prior action, but claims that ***could have been brought relating to the same transaction or event***. The Second Circuit has explained that "it is not the actual decision to deny leave to amend that forms the basis of the [*res judicata]* bar." *No. Assurance Co. v. Square D Co.*, 201 F.3d 84, 88 (2d Cir. 2000). Rather:

> [T]he [*res judicata*] bar is based on the requirement that the ***plaintiff must bring all claims at once against the same defendant relating to the same transaction or event***. The claims will be barred through the normal rule barring claims that should have been brought, regardless of whether the plaintiff seeks to add them to the initial suit. ***Thus, the actual decision denying leave to amend is no more than a proxy to signify at what point claims have been forfeited due to a plaintiff's failure to pursue all***

> *claims against a particular defendant in one suit. The bar,*
> *however, turns on normal principles of claim preclusion, i.e.,*
> *whether [plaintiff] was required to bring its claims in the initial*
> *suit.*

*Id.* (emphasis added).  Thus, each of the cases cited by Redcell involved denial of leave to amend a Complaint to add a claim *that arose out of the same transaction or occurrence and, therefore, was required to have been brought in the original action.*  *See Joyner v. Alston & Bird LLP,* No. 21CIV8549ATSLC, 2022 WL 6244417, at *6 (S.D.N.Y. May 13, 2022), *report and recommendation adopted,* 2022 WL 4115954 (S.D.N.Y. Sept. 9, 2022) (denial of leave to amend complaint to add claims against the same defendants arising from the same allegations in first action precluded second action); *Yaba v. Roosevelt*, 961 F. Supp. 611, 623 (S.D.N.Y. 1997) (same); *United States v. McGann*, 951 F. Supp. 372, 381 (E.D.N.Y. 1997) (same); *see also McKenna v. City of Philadelphia,* 304 F. App'x 89, 91-93 (3d Cir. 2008) (same); *Est. of Moore v. Roman*, No. CV1816345RBKKMW, 2021 WL 3163992, at *2 (D.N.J. July 27, 2021) (same).

That rationale does not apply here because Redcell sought to add its CFAA claim as a *permissive counterclaim under Fed. R. Civ. P. 13(b).*  Unsurprisingly, therefore, Redcell does not cite a single case applying *res judicata* when the claim at issue was a *permissive counterclaim,* because the rationale of *Northern Assurance* is inapplicable: Permissive counterclaims are claims "against an opposing party *not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim*." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (quoting Fed. R. Civ. P. 13(a)) (emphasis added). Permissive counterclaims can be brought in the same action, but need not be, and they must be predicated on an independent basis for federal jurisdiction.  *Id.*; *see also FUJIFILM N. Am. Corp. v Geleshmall Enterprises LLC,* 239 F. Supp. 3d 640, 645 (E.D.N.Y. 2017).  Since a defendant is not "required to bring its [permissive counterclaims] in the initial suit," *No.*

*Assurance,* 201 F.3d at 88, *res judicata* does not attach.

Although Trucco's CFAA claim involves Trucco and Redcell, it does ***not*** arise out of the same transaction or occurrence that is the subject matter of the Redcell Action. The Redcell Action revolves around an alleged copyright infringement of Redcell's PLEXUS IMP software, as well as the alleged unlawful retention of Redcell's independent contractors. (*See*, *e.g.,* Redcell Action Decision at 2 (explaining Redcell's allegations).)   This matter, by contrast, involves allegations that Redcell unlawfully accessed Trucco's server and is predicated on facts that only occurred after the Complaint in the Redcell Action had been filed.   Indeed, as explained above, Trucco first discovered that Redcell had unlawfully accessed and was using Trucco's confidential information to advance Redcell's interests in ongoing litigation. (Compl. ¶¶ 29-34.) Redcell's CEO and expert witness admitted during their depositions to accessing and relying on thousands of Trucco's confidential documents obtained from Trucco's backup data. (*Id.* ¶ 41, 44.) Redcell never had authorization to access this data, but even if it impliedly did at some point, it accessed this data *after* the end of its relationship with Trucco and, therefore, after any authorization had been revoked. (*Id.* ¶ 43; *see further infra* Point II.)

 Under longstanding Supreme Court precedent, permissive counterclaims are not barred by *res judicata* in a subsequent suit. *See Mercoid Corp. Mid-Continent Inv. Co.*, 320 U.S. 661, 669-71 (1944) (claim that patent infringement litigation violated antitrust law was a permissive, not a mandatory, counterclaim and was not barred in a subsequent suit by failure to raise it in the infringement suit); *see also Metallgesellschaft AG v. Foster Wheeler Energy Corp.*, 143 F.R.D. 553, 558 (D. Del. 1992). Accepting Redcell's argument would effectively nullify Rule 13's distinction between permissive and mandatory counterclaims.

Put another way, Trucco's CFAA claim (and New Jersey law claims) do not meet the

elements for the application of *res judicata*.   Because Trucco's claims are predicated on an entirely different transaction or occurrence, there is no identity of issues between the CFAA claim and the issues in the Redcell Action.   *See No. Assurance Co.,* 201 F.3d at 88 (application of the res judicata "bar, however, turns on normal principles of claim preclusion, i.e., whether [the pleading party] was required to bring its claims in the initial suit."). Since it was not required to bring this claim in the Redcell Action, res judicata cannot apply and does not bar this action.

## II.   TRUCCO'S COMPLAINT ADEQUATELY STATES A CLAIM FOR RELIEF UNDER THE CFAA.

Redcell next argues, in conclusory fashion, that Trucco fails to state a CFAA claim because the CFAA does not "cover circumstances where an entity 'has permission to access certain information and then uses that information for improper purposes.'" (Redcell Mem. at 8 (quoting Redcell Action Decision at 8 (Russ Decl. Exhibit J [Docket No. 34-6]).   Redcell's argument ignores much of Trucco's Complaint, however, which cures this purported deficiency flagged by the Court in the decision in the Redcell Action.

To plead a CFAA claim, as this Court previously recognized, Trucco must allege that Redcell "(1) accessed a 'protected computer'; (2) 'without any authorization or exceeding its authorized access'; and (3) caused 'loss' in excess of $5,000." (Redcell Action Decision at 6 (quoting *LivePerson Inc. v. 24/7 Customer, Inc.* 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015)).[2] The

---

[2] The Decision in the Redcell Action also held that Trucco had not alleged that Redcell had accessed a "protected computer," i.e., one that operated in interstate or foreign commerce. (Redcell Action Decision at 6.)   Redcell does not contest that Trucco has cured this defect by alleging that Trucco's server operated in both New Jersey and New York.   (Compl. ¶ 51); *see Dedalus Found. v. Banach*, No. 09 CIV. 2842 (LAP), 2009 WL 3398595, at *2 (S.D.N.Y. Oct. 16, 2009) (for this element of a CFAA claim "it suffices to state the computer was used for the business and the business operated in two different states.") (citation and alteration omitted).

Court must, of course, accept as true Trucco's allegations in its Complaint in this action, not the proposed permissive counterclaim in the Redcell Action.

Trucco's Complaint sufficiently alleges that Redcell's access to the server ***after the relationship with Trucco ended***, was unauthorized.  Indeed, in its decision in the Redcell Action, this Court recognized that when the parties' relationship ends, subsequent access is construed as unauthorized.  *Id.* at 10 (citing *Poller v. BioScrip, Inc.*, 974 F. Supp. 2d 204, 233 (S.D.N.Y. 2013) ("[W]here an employee has certain access to a computer or system associated with her job, that access will be construed as unauthorized within the meaning of the CFAA only where it occurs after the employee is terminated or resigns.")).  The Court faulted Trucco's prior pleading for failing to allege that it took measures to terminate Redcell's access to the server or notify Trucco that it no longer had access.  *Id.* at 11.

Trucco's Complaint in this action specifically addresses that issue.  Trucco alleges that after the Redcell Action was filed, its IT consultant noticed that the server was continuing to run a program called FileZilla that was apparently making a backup copy of the server.  (Compl. ¶ 29.) Trucco then began taking steps to change its server, including changing its passwords for the former Redcell programs that were running on the server.  (Compl. ¶¶ 30-31.)  However, in investigating and attempting to change the server, Trucco discovered other programs that Redcell had installed, namely VMWARE, which allowed Redcell to have remote access to Trucco's server. (Compl. ¶ 32.)  Trucco alleges that it:

> had not been provided the password from VMWARE and was unable to get through to someone from Redcell to provide it. Trucco was, therefore, forced to contact VSphere to purchase a new license. Trucco was eventually able to access the VMWARE system and remove Redcell's access.

*Id.*

13

This process, however, took time and Trucco was only able to fully switch its server to a new, cloud-based server as of May 2020.  (Compl. ¶ 34.) In the interim, however, Trucco alleges that Redcell **continued to access the server** and, indeed, not only continued copying files—despite the end of the parties' relationship—but accessed them and used them in the Redcell Action.  (Compl. ¶¶ 35-46.)

Redcell, of course, ignores these allegations and the portions of this Court's decision it finds inconvenient. Trucco's Complaint sufficiently alleges that after its relationship with Redcell ended, it took steps to terminate Redcell's access, including attempting to get through to Redcell to get passwords to the software Redcell had used to access the server and eventually managing to change the password. (Compl. ¶ 34.) Any authorization for Redcell to "make backup copies" ended when Trucco attempted to remove access after the relationship ended. Despite these efforts, Redcell accessed the server, without authorization, and copied and used numerous confidential files from the server.  (*Id.* ¶¶ 35-54.)  These actions have required Trucco to overhaul its data storage system, causing it to incur more than $5,000 in damages, something this Court has already found is sufficient to establish the requisite "loss" required by the CFAA. (Redcell Action Decision at 12.) As such, Trucco adequately pleads its CFAA claim and Redcell's Motion should be denied.

## III.     <u>TRUCCO ADEQUATELY ALLEGES CLAIMS FOR VIOLATIONS OF NEW JERSEY LAW.</u>

### A. *Trucco Pleads a Nexus between the Alleged Conduct and Harm Felt in New Jersey to Permit Claims under New Jersey Law.*

Redcell next argues that Trucco's New Jersey claims (NJCROA and common law) should be dismissed because both Trucco and Redcell are New York companies and Trucco's server was physically located in New York.  Redcell's argument commits the cardinal sin of

Rule 12(b)(6) motions, ignoring the actual allegations in Trucco's Complaint and arguing different facts.

Assuming the truth of Trucco's allegations, as this Court must, *Kassner*, 496 F.3d at 237, Trucco pleads an adequate nexus between the conduct and actions alleged in the Complaint and New Jersey to support claims under New Jersey law. *See, e.g.*, *Halak v. Scovill*, 296 N.J. Super. 363, 370, 686 A.2d 1245, 1249 (App. Div. 1997) (New Jersey courts will permit New Jersey statutory and common law claims against non-resident when tortious effects are felt in New Jersey); *A & G Rsch., Inc. v. GC Metrics, Inc.*, 862 N.Y.S.2d 806 (NY Sup. Ct. 2008) (adjudicating claim under New Jersey Computer Related Offenses Act where plaintiff alleged that New York citizen accessed plaintiff's "office and its computers [that] are located in New Jersey").

A substantial portion of the harm for which Trucco seeks redress under New Jersey law occurred in New Jersey. Trucco maintains offices and a distribution facility in Vineland, New Jersey. (Compl. ¶ 14.) Although the server at issue was physically located in New York, Trucco's New Jersey office used that server. (*Id.* ¶ 20.) Defendants have previously transacted business in this District in providing past services to Trucco's New Jersey facility. (*Id.* ¶ 13.) Defendants' alleged access to the server involved files and document (including in Trucco's Exclusive Folder), relating to Trucco's New Jersey business. (Compl. ¶ 13, 20). Further, Trucco has one location in New York and one in New Jersey, and Trucco specifically alleges that it distributes its products in both interstate and foreign commerce from its location in New Jersey, and that it makes significant revenues in New Jersey. (Compl. ¶ 14). In addition, the data and information at issue here – including, but not limited to, confidential tax returns, sensitive financial documents, a confidential settlement agreement, and proprietary corporate data and

trade secrets, (Compl. ¶¶ 38-41) – are company-wide and implicate Trucco's entire business operations, including operations at Trucco's New Jersey location. Therefore, Defendants' conduct was unquestionably directed at New Jersey.

Redcell may disagree with the above factual allegations, but at the motion to dismiss stage, the Court is not tasked with resolving factual disagreements. As the New Jersey District Court noted in transferring the action to this Court, "[f]ederal district courts are generally well-equipped to apply the laws of other states and frequently do so in diversity cases," and this Court "is entirely capable of applying [New Jersey statutory law]."  [Docket No. 19 at 6-7.]

### B.  Even if the Court Dismisses the CFAA Claim It Should Retain Jurisdiction Over the State Law Claims.

Redcell makes no substantive arguments for dismissal of the NJCROA or common law claim, but argues that if the Court dismisses Trucco's CFAA claim, it should also decline jurisdiction over Trucco's state law claims. Even if the Court dismisses the Trucco's CFAA claim,  however, it "may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *see* 28 U.S.C. § 1367(c)(3) (district court's "*may* decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction.") (emphasis added).  A district court "should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966): economy, convenience, fairness, and comity." *Shahriar v Smith & Wollensky Rest. Group, Inc.,* 659 F3d 234, 245 (2d Cir. 2011) (quoting *Jones,* 358 F.3d at 214) (internal citation cleaned up).

Here, factors of economy, convenience, and fairness weight in favor of retaining

supplemental jurisdiction in the event the CFAA case is dismissed.  The District of New Jersey transferred this action to this Court specifically on the basis that it would be "more expeditious, and less expensive for the parties to continue" litigating in this forum.  (Memorandum Opinion at 6 [Docket No. 19].) Although this action relates to a different set of circumstances, this Court is familiar with the parties' business relationship, which forms the background of both actions. Further, many of the witnesses relevant to this case live abroad in South America. (*See, e.g.*, Declaration of Nicola Pacia ¶¶ 5-6 [Docket No. 17].)  Thus, in the event the Court dismisses Trucco's CFAA claim, it should nonetheless retain jurisdiction over Trucco's other claims.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated: December 1, 2022                          Respectfully submitted,

                                                 **GENOVA BURNS, LLC**

                                                 By:  _/s/ Lawrence Bluestone_ _____
                                                        Charles J. Messina, Esq.
                                                        Lawrence Bluestone, Esq.

                                                        *Attorneys for Plaintiff,*
                                                        *A.J. Trucco, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Brief was filed through the Court's ECF system, which caused a copy of those documents to be served on all counsel of record.

_/s/ Lawrence Bluestone_
Lawrence Bluestone

Dated: December 1, 2022

16824053v1 (22605.013)